UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,CASE NO. 19-CR-20768-RNS-1

Plaintiff,

vs.

EVELIO SUAREZ BRITO,

Defendant.
_____/

**DEFENDANT, EVELIO SUAREZ BRITO'S
MOTION FOR A DOWNWARD VARIANCE
PURSUANT TO THE TITLE 18 U.S.C. §3553(a) FACTORS**

**COMES NOW** the Defendant, **EVELIO SUAREZ BRITO**, by and through his undersigned counsel, and presents herewith, his Motion for a Downward Variance pursuant to the Title 18 U.S.C. §3553(a) Factors, and states as follows:

**INTRODUCTION**

First, it should be clear that Evelio Suarez Brito continues to be sincerely remorseful for his criminal conduct and acknowledges that the offense to which he has entered his plea of guilty is of a serious nature. Further, the Defendant wholly realizes the impact his poor decision to become involved in this criminal conduct will have upon his family and his future, and knows that he has nobody to blame but himself.

It should be noted that early on Evelio Suarez Brito agreed to assist the Government with regard to very serious matters. Additionally, it should be noted that all the information that the Government received concerning this case came from the Defendant, who testified at his own Grand Jury proceeding, well-knowing that his testimony would give rise to the Indictment (Information) in this case.

The United States Supreme Court has stated that Federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gall v. United States*, 128 S.Ct. 586, 589 (2007); *United States v. Dixon,* 718 Fed. Appx. 873 (11th Cir. 2017).

It is the sincere hope that this Honorable Court will examine Mr. Suarez Brito's "human failings" along with other aspects of his life, including his sincere desire to turn-the-page on his prior life of unlawfulness through his sincere cooperation, and find that a sentence below the low-end of the advisory sentencing guideline range is appropriate.

## **PROCEDURAL BACKGROUND**

1. Previously, on December 20, 2019 in Case No. 18-CR-20669-RNS the Defendant was sentenced to one hundred fifty-six (156) month term of imprisonment and three (3) years' supervised release. It was provided that the sentence imposed in Case No. 18-CR-20669-RNS was to run concurrently with the yet to be imposed sentence in this case, 19-20768-CR-GAYLES. [D.E. 63]. The Judgment was entered on December 31, 2019. [D.E. 66]. Case No. 18-CR-20669-RNS concerned the money laundering activities of the Defendant with overlapping time periods utilizing the Defendant's same check cashing businesses.

2. On January 10, 2020, this case was transferred from the Honorable Darrin P. Gayles division to this Court for plea and sentencing in anticipation of an interrelated disposition pursuant to Section 2.15.00(C) of the Internal Operating Procedures of the United States District Court for the Southern District of Florida.

3. On January 31, 2020, the Defendant pled guilty to a one-count Information in this case, therein charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. §1956(h). [D.E. 15]

4. The Presentence Investigation Report provides at paragraph 101: "Guideline Provisions: Based upon a total offense level of 24 and a criminal history category of IV, the guideline imprisonment range is 77 to 96 months." [D.E. 31]

5. On August 11, 2020, the Defendant filed Objections to the Presentence Investigation Report, therein objecting to the application of a two (2) level enhancement for an offense involving intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, pursuant to U.S.S.G. §2L1.1(b)(6); objecting to the two (2) level enhancement for sophisticated laundering pursuant to U.S.S.G. §2S1.1(b)(3), and objecting to the criminal history computation. [D.E. 30]. Therefore, these issues remain for the Court's determination.

Additionally, it should be noted that in paragraph 92 of the Presentence Investigation Report under the "Assets" heading, the following properties are listed: 8551 West 33rd Avenue; 7080 Northwest 177th Street; 2680 West 60th Street, and 5402 Southwest 185th Terrace. The Defendant respectfully advises this Court that at no time did he hold a legal, beneficial, or any other type of interest in these properties and would certainly be willing to execute a Quit Claim Deed to the United States of America to resolve any future questions in that regard.

6. The sentencing hearing is presently scheduled for Monday, September 14, 2020 at 8:30 a.m. [D.E. 29]

7. The within Motion for a Downward Variance pursuant to the Title 18 U.S.C. §3553(a) Factors is submitted in the utmost of good faith and in the interest of justice.

## THE HISTORY AND CHARACTERISTICS OF EVELIO SUAREZ BRITO THAT WARRANT CONSIDERATION

Title 18 U.S.C. §3553(a)(1) provides that the court in fashioning the appropriate sentence to be imposed, shall consider "*the nature and circumstances of the offense and the history and characteristics of the defendant*."

With regard to the history and characteristics of Evelio Suarez Brito, the Presentence Investigation Report prepared by the Probation Office more than adequately sets out the family history and personal information of the Defendant, however there are few points that should be noted.

The Defendant has a minor daughter who is an honor student in high school, who he has faithfully supported up to the time of his incarceration.  His estranged wife, Zairis Cruz, has advised that the Defendant is a "good" father, and that she continues to support the Defendant. Additionally, the Defendant has a twenty-seven (27) year old daughter who is a college graduate and is presently employed as a realtor in Tampa, Florida. (Correspondence to the Court from Mr. Suarez Brito's daughters sincerely reflecting upon his good character are attached hereto as ***Composite Exhibit "A."***)

For the last twenty-four (24) months the Defendant has worked in a trusted position at FDC Miami as an orderly.

### *The Defendant's Assistance to the Government as a Title 18 U.S.C. §3553(a) Factor*

The Defendant has been fully debriefed on numerous occasions and in-fact testified before a Grand Jury.  Again, it is significant to note that all the information that the Government received concerning this case came from the Defendant, who testified at his own Grand Jury proceeding, well-knowing that his testimony would give rise to the Indictment (Information) in this case.

4

(Apparently, in-part as a result of the COVID-19 situation, Indictments of other individuals have not been forthcoming thus far.)

During the course of the debriefings, the Defendant described everything he knew about his criminal conduct as well as the conduct of others.  Mr. Suarez Brito supplied whatever information he could in a candid and truthful manner, never attempting to diminish his role in the criminal conduct.  Further, at all times the Defendant stood ready, willing, and able to testify in the event needed by law enforcement and the prosecutors.

Although the Government will not be filing a motion for reduction of sentence pursuant to U.S.S.G. §5K1.1 thus far, this Court may consider the Defendant's cooperation as bearing upon the *characteristics of the defendant.*

Specifically, this Honorable Court may take the Defendant's cooperation into consideration when applying the Title 18 U.S.C. §3553(a)(1) factors with regard to the history and characteristics of the Defendant in accord with *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014).

The court in *United States v. Robinson,* 741 F.3d 588 (5th Cir. 2014) held that a sentencing court has the power to consider a defendant's cooperation under §3553(a), *irrespective* of whether the Government files a §5K1.1 motion and that a sentencing court's failure to recognize its discretion to consider a defendant's cooperation under §3553(a)(1) is a significant procedural error.

***Title 18 U.S.C. § 3553(a)(2)(A)***
***"the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."***

As part of its sentencing obligations, this Court should consider the need for the sentence imposed to "provide just punishment for the offense." *Title 18 U.S.C. § 3553(a)(2)(A).*

To determine the just punishment for Mr. Suarez Brito in this case, the Court should consider how he will serve his prison time. In this instance he will spend a portion of his time in lockdown conditions similar to solitary confinement. Since March 13, 2020, the BOP "modified its operations" to respond to the spread of COVID-19.[1] Individuals "in every institution" are "secured in their assigned cells/quarters to decrease the spread of the virus." Family and friends are prohibited from visiting. Programming, absent select UNICOR operations, has ceased and movement throughout the facility is suspended. And while BOP's website claims movement exceptions are made to permit showers three times a week, telephone and email access, commissary, and laundry, in reality even these most basic activities are not always allowed, and instead, conditions amount to a "total lockdown" for "almost twenty-four hours a day."

Not only will Mr. Suarez Brito be on lockdown, prohibited from seeing his loved ones, and unable to engage in rehabilitative or productive programming, he will also be at grave risk of contracting COVID-19. CDC guidance, such as social distancing, is simply "impossible to achieve in our federal prisons"—particularly during a lockdown.[2] Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bathe regularly and are unable to effectively disinfect their

---

[1] Fed. Bureau of Prisons, *Fed. Bureau of Prisons COVID-19 Action Plan* (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp (Phase II). Phase II's modified operations were extended as described in Phase III, Phase IV, Phase V, Phase VI, and Phase VII.
[2] Letter from Dr. Sandro Galea, Dean, Boston Univ. School of Pub. Health, et al., to President Trump 1 (Mar. 27, 2020), https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf (co-signed by numerous public health officials from leading medical and public health institutions); *see also* Ctrs. for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://bit.ly/2M9IF6a (last visited May 28, 2020) (recognizing that correctional and detention facilities present "unique challenges for control of COVID-19 transmission," due to the fact that individuals "live, work, eat, study, and recreate within congregate environments").

6

surroundings. Unsurprisingly, these conditions have fueled the spread of COVID-19 throughout BOP facilities.

Specifically, according to the Federal Bureau of Prisons online resource page, as of August 24, 2020, "[t]here are 1,493 federal inmates and 634 BOP staff who have confirmed positive test results for COVID-19 nationwide. Currently, 10,296 inmates and 875 staff have recovered. There have been 116 federal inmate deaths and 1 BOP staff member death attributed to COVID-19 disease. Of the inmate deaths, 4 occurred while on home confinement."

It is submitted, that because of COVID-19, any time Mr. Suarez Brito spends in prison will necessarily be more severe than it ordinarily would be. Therefore, the Defendant requests this Honorable Court to consider the oppressive nature of BOP confinement in varying below the guidelines range.

### *Title 18 U.S.C. § 3553(a)(2)(D)* *"the need for the sentence imposed . . . to provide defendant with needed educational and vocational training."*

One of the fundamental purposes of sentencing is rehabilitation.[3] However, rehabilitation is currently impossible in the BOP. In an attempt to respond to COVID-19, the BOP has implemented a modified operation plan, which limits social visits, inmate movement, and has suspended all volunteer visits, including visits from religious advisors. Under these modified operations, Mr. Suarez Brito will be unable to receive programming and rehabilitative resources, and instead, will be confined in his "assigned cells/quarters." Inasmuch as Mr. Suarez Brito will receive no rehabilitation in prison for a period of time, it is respectfully requested that this Court consider this fact in determining a variance in this case.

---

[3] Title 18 U.S.C. § 3553(a)(2)(D).

### *Title 28 U.S.C. § 994(g)*
### *"the Commission shall take into account the nature and capacity of the penal, correctional, and other facilities and services available" and "the sentencing guidelines . . . shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of Federal prisons."*

When enacting the Sentencing Reform Act of 1984, Congress confirmed that the "nature and capacity" of federal prisons is a critical sentencing consideration.[4] For this reason, Congress obligated the Sentencing Commission to formulate guidelines "to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons." *Title 28 U.S.C. § 994(g)*.

Despite this obligation, BOP facilities have historically been, and remain, overcrowded.[5] Adding COVID-19 to the mix has resulted in prisons and jails that are even more dangerous, inhumane, and deadly than before. The BOP is simply not equipped to handle this global pandemic. Courts have called BOP's COVID-19 response "an outrage" and "Kafkaesque," confirming that "BOP is struggling to handle this crisis within its prison population."[6]

---

[4] Title 28 U.S.C. § 994(g).

[5] *See* Fed. Bureau of Prisons, *Fed. Bureau of Prisons Program Fact Sheet* (rev. July 31, 2019) https://bit.ly/36B3YXZ; *see also* U.S. Dep't of Justice, *FY2020 Performance Budget Congressional Submission Federal Prison Systems Buildings and Facilities* 3-4, https://bit.ly/2M9nRvv; *see also*; Oversight of the Federal Bureau of Prisons and Implementation of the First Step Act of 2018: Hearing before the Subcomm. On Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 115th Cong. 2-4 (2019) (statement of Kathleen Hawk Sawyer), https://bit.ly/2M0E2LR.

[6] *United States v. McIndoo*, ---F.Supp.3d---, 2020 WL 2201970, at *8 (W.D.N.Y. May 6, 2020); *see also* Class Action Complaint, *Torres v. Milusnic*, No. 20-cv-04450 (C.D. Cal. May 16, 2020), ECF No. 1, at 79 (Declaration of Shamsher Samra, M.D.) (recognizing that the alleged conditions at Lompoc "make it virtually impossible to ensure the safety of prisoners who remain housed at the facility if the current course is maintained" and the conditions "practically ensure[ ] that all remaining prisoners will eventually contract COVID-19 unless extraordinary measures are taken now"); Emergency Petition for Writ of Habeas Corpus, *Wilson v. Williams*, No. 20-cv-794 (N.D. Ohio Apr. 13, 2020), ECF No. 1-3, at 4 (Declaration of Meghan Novisky, PhD) ("To be clear, without drastic intervention, may more incarcerated individuals and staff [at FCI Elkton] will become infected and will face elevated risks for medical complications and mor[tality]."); Mem. in Support of Mot. for Immediate Bail, *Grinis v. Spaulding*, No. 20-cv-10738-GAO (D. Mass Apr. 15, 2020), ECF No. 4-7, at 8 (Declaration of Dr. Joe Goldenson) ("persons currently detained at

### *18 U.S.C. § 3553(a)(2)*
### *The need to protect the public from further crimes of the defendant.*
### *There is a Low Risk of Recidivism.*

Another important factor regarding this Defendant is that there is a low risk of recidivism and a correspondingly lesser need of incarceration to protect the public. 18 U.S.C. § 3553(a)(2).

Based on the Title 18 U.S.C. §3553(a) factors, the age of the Defendant, and the cooperation furnished to the Government, it is respectfully submitted that the likelihood of this Defendant engaging in criminal conduct in the future is quite small.

Therefore, it is submitted that a sentence below the advisory guideline range will protect the public from further crimes, since there is a low risk of recidivism and a correspondingly lesser need of incarceration to protect the public. 18 U.S.C. § 3553(a)(2).

### *RECENTLY STATED SENTENCING CONSIDERATIONS OF THE ELEVENTH CIRCUIT*

As the 11th Circuit has repeatedly and recently stated in the advisory Guideline post-*Booker*[7] and *Gall*[8] era, the proper approach for sentencing judges is as follows:

> The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. 18 U.S.C. § 3553(a)(2). Additionally, the court must consider: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the kinds of sentences available; (4) the guideline sentencing range; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1), (3)–(7).

*United States v. Ruan*, No. 17-12653, 2020 WL 3886017, at *44 (11th Cir. July 10, 2020)

---

FMC Devens are at significantly greater risk of contracting COVID-19 than if they were permitted to shelter in place in their home communities").
[7] *United States v. Booker*, 543 U.S. 220 (2005).
[8] *Gall v. United States*, 552 U.S. 38 (2007).

9

The weight given to any of the § 3553(a) factors "is committed to the sound discretion of the district court, and this Court will not substitute its judgment in weighing the relevant factors." *United States v. Aguilar-Gil*, No. 19-14117, 2020 WL 3605827, at *3 (11th Cir. July 2, 2020). In weighing these factors, the sentencing judge is not required to weigh them equally, "and it has discretion to attach greater weight to one factor than another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015)." *United States v. Kolla*, No. 19-12558, 2020 WL 3526714, at *1 (11th Cir. June 30, 2020). In relationship to the advisory Guideline range "the district court retains discretion to give greater weight to any of the § 3553(a) factors, or combination of factors, than to the guideline range."*Id*. Thus, the "district court also 'has wide discretion to decide whether the [§] 3553(a) factors justify a variance outside the guideline range.' *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010)." *Id*. Each of the §3553(a) factors that Mr. Suarez Brito believes are important to the Court's determination of a reasonable sentence have been discussed above.

### *THE NEED FOR INDIVIDUALIZED SENTENCING*

The United States Supreme Court in *Pepper v. United States,* 131 S.Ct. 1229 (2011), emphasized the need for individualized sentencing based not only on the crime, but on the particular defendant as well. They said that Federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Citing: *Gall v. United States*, 128 S.Ct. 586, 589 (2007).

As this Honorable Court is well-aware, the Court has full authority to consider any evidence in deciding whether the Guidelines "properly reflect §3553(a) considerations." *Rita v. United States,* 551 U.S. 338, 351 (2007).

The Supreme Court has expressly directed sentencing courts that they may not presume that the guidelines range is reasonable. *Gall v. United States,* 128 S. Ct. 586 (2007). Rather, sentencing courts are directed to make an "individualized assessment" of the sentence warranted by §3553(a) "based on the facts presented." *Gall v. United States,* 128 S. Ct. at 597 (2007). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008). Ultimately, courts are required to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote general and specific deterrence, rehabilitate the defendant and protect the public. 18 U.S.C. §3553(a).

## **CONCLUSION**

It is respectfully submitted that there is a well-founded basis upon which this Court may grant this request for a downward variance, and that such a variance would reflect the seriousness of the offense; promote respect for the law, and provide just punishment for the offense. Further, a variance would afford a more than adequate deterrence to any future criminal conduct of the Defendant and protect the public as well. In sum and substance, this would be in accord with the sentencing principals set forth in Title 18 U.S.C. §3553.

Evelio Suarez Brito is presently fifty-five (55) years of age, and although he must serve the sentence imposed in Case No. 18-CR-20669-RNS-1, he deserves another chance to demonstrate that he can live a fully law-abiding life.

A sentence below the low-end of the advisory guideline range in this instance would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in Title 18 U.S.C.A. §3553(2)(A-D).

**WHEREFORE**, Defendant, **EVELIO SUAREZ BRITO,** respectfully prays that this Honorable Court enter its order granting the within Motion for a Downward Variance pursuant to the Title 18 U.S.C. §3553(a) Factors, and thereby impose a sentence below the low-end of the advisory sentencing guideline range.

> Respectfully submitted,
>
> Ana M. Davide, Esq.
> Florida Bar No. 875996
> 2929 SW 3rd Ave., Suite 420
> Miami, Florida 33129
> Telephone: (305) 854-6100
> Fax: (305) 854-6197
> E-mail: ana@anadavidelaw.com
> (Counsel for Def., *Evelio Suarez Brito.*)
>
> ***/s/ Ana M. Davide*_____**
> Ana M. Davide, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of August, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

> Ana M. Davide, Esq.
> Florida Bar No. 875996
> 2929 SW 3rd Ave., Suite 420
> Miami, Florida 33129
> Telephone: (305) 854-6100
> Fax: (305) 854-6197
> E-mail: ana@anadavidelaw.com
> (Counsel for Def., *Evelio Suarez Brito.*)
> ***/s/ Ana M. Davide*_____**
> Ana M. Davide, Esq.

## **SERVICE LIST**

**United States of America v. Evelio Suarez Brito**
**Case No. 19-CR-20768-RNS-1**
**United States District Court, Southern District of Florida**

Ignacio Jesus Vazquez , Jr., A.U.S.A.
United States Attorney's Office
Miami Special Prosecutions Section
99 Northeast 4th Street, Room 806
Miami, FL 33132
305-961-9318
Fax: 305-536-4699
Email: ignacio.vazquez@usdoj.gov

Sherika Prospere
U.S. Probation Officer
Wilkie D. Ferguson, Jr. United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, FL 33128
305-523-544 7
sherika_prospere@flsp.uscourts.gov

# *Composite Exhibit "A"*

August 28th, 2020

Mary Leslie Suarez
XXXX Baudelaire Ct.
Brooksville, FL, 34604.

Dear Honorable Judge Scola:

Honorable Judge Scola, my name is Mary Leslie Suarez, I am 27 years old and I am Evelio Suarez's (BOP#24119-018 ) oldest daughter.

I came to this country in 2011 from Cuba and with my father's guidance was able to graduate from American Heritage School in Plantation, Florida.   My father always instilled in me the importance of study and self-improvement, that is the reason why following my graduation, he enrolled me in an Intense English Course at the University of Miami.

He has always been a very loving father and is well loved by all who know him, especially golden agers.

Since I can remember, I have always seen him helping everybody. Always concerned about family. Wherever he is, there is always good energy since he is cheerful and jovial.

I know that he has made mistakes, but I also know from the bottom of my heart that this experience has made him reconsider alot and want to start a new beginning to make the right decisions. He describes this to me on many occasions.

Your Honor, one of the things that hurt us the most, is that unfortunately, he has not been able to enjoy my children who are his only grandchildren, and who are currently 2 and 3 years old. This will be a huge motivation for him, and with all our family and my unconditional support, we will help him to rejoin society in the most productive way. I feel committed and with the greatest desire in the world to help my father in everything he needs, I will be his pillar as he always been mine.

I thank you, Honorable Judge, for your time.

Sincerely,
Mary Leslie Suarez

Subject: Evelio Suarez Brito

Your Honor, Judge Scola

My name is "N.S.," I am fifteen years old, and a tenth grade student at Everglades High School, Miramar. I am also daughter of Evelio Suarez, we all know that my father has committed a crime, but he is also very sorry about the crime he has committed. I miss him so much and would love to have him in my life again as before. I love my father very much, no matter what he does. The reason I am writing this is because I would love if you gave my father another opportunity, my father promises he will not commit another crime, and I promise you as his daughter that I would not allow him to commit one ever again. Please give my father another chance, may God always bless you.

Sincerely,

"N.S."